IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00203-MSK

GEORGIA M. GONZALES,

       Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

       Defendant.

**ORDER AFFIRMING THE DECISION OF THE
COMMISSIONER OF SOCIAL SECURITY**

**THIS MATTER** comes before the Court on Plaintiff Georgia Gonzales's Brief **(# 24)** in support of her appeal from the Commissioner of Social Security's (the "Commissioner's") final decision denying her application for disability insurance benefits and supplemental security insurance, and Defendant's Response Brief **(# 26)**. Ms. Gonzales was at one time represented by counsel, but now proceeds *pro se*.

**I.**      **Jurisdiction**

Ms. Gonzales's appeal arises out of an application for disability benefits she filed in 2002.[1] The application was denied. Ms. Gonzales appealed to the Appeals Council without success and filed a civil action in this Court. As a result, her case was remanded for further fact-

---

[1] Ms. Gonzales filed an application for disability benefits in 1997. The application was denied at the administrative level, and she did not appeal.

finding.[2] Her application was denied again in 2007 after a hearing before an Administrative Law Judge ("ALJ"). The ALJ found that:

1. Ms. Gonzales met the insured status requirements of the Social Security Act through December 31, 2001.

2. She had not engaged in substantial gainful activity since August 25, 1998.

3. She had a severe, medically determinable impairment in the form of right arm and shoulder pain beginning April 20, 2005, but said impairment did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulation Number 4 (the "Listings").

4. She had the residual functional capacity ("RFC") as of April 20, 2005 to use her right arm for brief, intermittent activities such as light keyboarding or assembly or filing documents for 20 minutes at a time, up to 2 hours per day and to lift up to 5 pounds occasionally with her right hand and up to 15 pounds with her left. She could reach overhead only briefly, and could not lift weight overhead on her right side. She had no limitations, other than discomfort on the right side, in sitting, standing, walking, bending, stopping, and squatting.

5. Based on her RFC, she was capable of performing her past work as a cashier and, therefore, was not disabled.

The Appeals Council denied Ms. Gonzales's request for review of the ALJ's decision, thereby making it the final administrative decision for the purposes of judicial review. Subsequently, she filed a timely complaint in this Court challenging the Commissioner's denial of benefits. Accordingly, this Court properly exercises jurisdiction under 42 U.S.C. § 405(g).

**II.     Material Facts**

Ms. Gonzales was born in 1953 and has a high school education. In the relevant past, she worked as a certified nursing assistant ("CNA") and as a cashier. She claims that she became

---

[2]The undersigned was assigned this case on August 28, 2008, and therefore did not preside over the case at the time of the remand.

disabled on November 1, 2000.[3]

Ms. Gonzales testified that she was unable to work because of pain in her right arm and shoulder and pain and numbness in her right hand. She stated that after sustaining her injuries in 1995, she applied for unemployment benefits and sought other jobs, but was unsuccessful in both endeavors. Ms. Gonzales testified that she had only minor limitations in sitting and standing and that she could walk for about 20 minutes at a time. She stated that she was able to drive her car, groom herself, and perform several household chores without assistance. She clarified that she was slow to complete the chores, because she often used her non-dominant left hand to perform the work. She explained that her husband and son helped her with some chores as well. She testified that she had trouble sleeping because of pain and that she needed to lie down or nap every day for about an hour because of her pain.

A vocational expert ("VE") testified that Ms. Gonzales's prior jobs as a CNA and cashier were both semi-skilled positions, requiring medium and light exertion levels, respectively. The VE opined that an individual who was similarly situated to Ms. Gonzales and subject to limitations on lifting, carrying, reaching, and making repetitive movements with the right arm could perform work as a receptionist, call-out operator, or surveillance systems monitor. The VE opined that the same individual, requiring one-hour naps or rest at will and subject to the further limitation of walking only up to 20 minutes at a time would not be able to perform any work.

---

[3] In her application filed in 1997, Ms. Gonzales claimed that she became disabled in 1995, after a patient grabbed, twisted, and hit her arm, resulting in injuries to her neck and her right arm, wrist, and shoulder. In a hearing concerning her application now before the Court, her counsel changed the date to 2000.

### A. Medical History Prior to Onset Date

Ms. Gonzales's medical records are sparse. They reveal that she received treatment immediately after the March 1995 accident, and testing revealed no abnormalities. Ms. Gonzales returned to work at full duty in 4 months later. In July 1995, she denied having any problems completing her work and mentioned that she had been performing repetitive activities with her right arm and right hand without issue. Ms. Gonzales continued to work as a CNA for nearly one more year.

Her next medical records date from 1997, when she presented to Dr. A.P. Lussenhop, evidently wishing to undergo an MRI. Dr. Lussenhop declined to perform the MRI and referred her to neurologist Dr. James Ferrier, whom Ms. Gonzales visited quarterly from 1997 through early 2000. During her initial visit, Dr. Farrier found no abnormalities or neurological problems. Testing results were normal. At Ms. Gonzales's request, Dr. Farrier prescribed a TENS unit, which she reported worked very well to control her pain. Dr. Farrier also prescribed painkillers, which Ms. Gonzales reported also worked very well.

### B. Medical History After Onset Date

In August 2002, Ms. Gonzales presented to Dr. Mark Perea for evaluation. Dr. Perea opined that no objective findings supported imposing a limit Ms. Gonzales's abilities to lift or carry with either arm or to stand, walk, or sit. Ms. Gonzales then sought a second opinion concerning right arm pain from Dr. Philip Marin. Dr. Marin suggested that Ms. Gonzales undergo a regimen of steroid injections. He subsequently suggested that she undergo carpal tunnel release surgery.

In December 2002, Ms. Gonzales presented to Dr. David Richman for an independent

examination. Dr. Richman opined that Ms. Gonzales would not benefit from carpal tunnel release and that the diffuse and severe nature of her symptoms coupled with the lack of physiologic evidence to support her symptoms made arriving at any single diagnosis difficult.

In November 2004, Ms. Gonzales visited Dr. John Kemp to evaluate her neck and arm pain and hand numbness. Dr. Kemp found that she had some diminished sensation and some weakness on her right side. He surmised that her pain was being caused by a nerve condition and suggested that she undergo an MRI with another doctor or continue to visit him for orthopedic treatment.

In April 2005, at the request of her former counsel, Ms. Gonzales visited Dr. Velma Campbell for an evaluation. She stated that Ms. Gonzales: (1) should avoid strenuous and repetitive use, but could use her right arm to perform brief activities such as light keyboarding, light assembly, and filing for 15 to 20 minutes at time, up to 2 hours a day; (2) could occasionally lift 5 pounds with her right arm and 10 to 15 pounds with the left; and (3) could reach overhead, but could lift no weight on the right side and only 5 pounds on the left. Dr. Campbell opined that Ms. Gonzales could train for sedentary to light occupations.

**III.   Analysis**

    **A.   Standard of Review**

Judicial review of the Commissioner's determination that a claimant is not disabled within the meaning of the Social Security Act is limited. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495 (10th Cir. 1992). Section 405(g) of the Social Security Act establishes the scope of this Court's review of the Commissioner's denial of benefits. *See* 42 U.S.C. § 1383(c)(3) (incorporating provisions of 42 U.S.C. § 405(g)). This Court's review is

limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Id.* It requires more than a scintilla of evidence but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F. Supp. 553 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Finally, this Court must meticulously examine the record, but it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.     Evaluation of Disability

The criteria to obtain disability insurance benefits under the Social Security Act are that a claimant meets the insured status requirements, is younger than 65 years of age, and is subject to a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequence for evaluating disability. *See* 20 C.F.R. § 404.1520(b)-(f)*; Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If the ALJ determines that a claimant is or is not disabled at any point in the sequence, the analysis ends. *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799 (10th Cir. 1991).

First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment or combination of impairments that limits his or her physical or mental ability to perform basic work activities. *Id*. § 404.1520(c). Third, the claimant must compare his or her impairment to established Listings. If the impairment matches or is equivalent to the Listings, the claimant is judged conclusively disabled. *Id.* § 404.1520(d). If the claimant's impairment does not match or is not equivalent, the analysis proceeds to a fourth step. *Id.* § 404.1520(e). At the fourth step, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *see also* 20 C.F.R. § 404.1520(f). If the claimant is able to perform his or her previous work, he or she is not disabled. If the claimant is not able to perform his or her previous work, the analysis proceeds to a fifth step. At the fifth step, the burden of proof shifts, and the Commissioner must demonstrate: (1) that based on the claimant's RFC, age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987). The ALJ's burden at the fifth step is met if the decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

  **C. Evaluation of Ms. Gonzales's Arguments**

Ms. Gonzales argues that the ALJ made four errors in arriving at his decision that she is

not disabled. The Court addresses each argument in turn.[4]

### 1.     The ALJ's Assessment of the Evidence and Credibility Determination

First, Ms. Gonzales argues that the ALJ erred at step two of the five-step process, by finding that no records exist to support her claim that she experiences chronic pain. In making this argument, Ms. Gonzales misapprehends the ALJ's reasoning and findings. In reality, the ALJ found that Ms. Gonzales's claims that she suffered from a disabling, medically determinable impairment were not supported by the objective medical evidence in her case. Specifically, the ALJ found that her few visits to medical professionals and her failure to comply with the professionals' instructions concerning her treatment were contradictory to the existence of a disabling impairment and eroded the credibility of her claims.

Ms. Gonzales does not dispute the ALJ's assertion that she failed to return to visit several medical professionals who treated her arm and wrist pain and requested that she obtain follow-up treatment from them. For example, as noted by the ALJ, although both Drs. Marin and Kemp suggested ongoing treatment for her right arm and hand pain – including continued visits, steroids, surgery, and an MRI – the record does not indicate that she followed either doctor's suggestions or that she continued to visit them as requested. In making a disability determination, an ALJ may properly consider whether a claimant followed prescribed treatment that might restore the claimant's ability to work. *Frey*, 816 F.2d at 517; *see also* 20 C.F.R. § 404.1530. Accordingly, the ALJ did not err in considering apparent evidence that Ms. Gonzales did not follow the potentially rehabilitating treatment prescribed to her.

---

[4]Because Ms. Gonzales is a *pro se* litigant, the Court construes her filings liberally. *See Parker v. Astrue*, 298 F. App'x 701, 701 (10th Cir. 2008).

Further, an ALJ may also consider the attempts a claimant makes to alleviate pain in order to evaluate the credibility of the claimant's contentions that pain is so severe as to be disabling. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Credibility is the province of the ALJ. *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992). An ALJ's credibility determination is generally considered binding upon review, so long as it is supported by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988). The Court finds that Ms. Gonzales's failure to seek treatment is substantial evidence to support the ALJ's determination that her claims of disabling pain were not fully credible.

### 2. The ALJ's Comparison of Ms. Gonzales's Impairments to the Listings

Ms. Gonzales also argues that the ALJ erred at step three in failing to find her impairments to meet or medically equal Listing 1.04, which concerns spinal disorders.[5] She seems to argue that results from an MRI referenced in Dr. Campbell's report establish that she suffers from degenerative disc disease and multilevel facet arthropathy, two impairments categorized under Listing 1.04. However, she concedes that the MRI results themselves are not in the record.

In order to meet a Listing, an impairment must satisfy **every** criterion of the Listing, without exception. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Alternatively, to equal a

---

[5]The Court construes Ms. Gonzales's quoting short fragments of Listing 1.04 together with her mention of a spinal MRI to be an argument that she meets or equals this Listing. Ms. Gonzales also quotes Listing 4.0, concerning cardiovasular disorders and ulcers, but presents no further statements concerning either. Again, because Ms. Gonzales did not argue in her application for benefits that heart disease or ulcers were a cause of her disability, the Court cannot find error in the ALJ's failure to discuss or evaluate the Listing that concerns these particular impairments. Accordingly, the Court considers only Listing 1.04.

Listing, a non-listed impairment or combination of impairments must cause symptoms equal in severity and duration to every criterion of the most similar Listed impairment. *Id.* at 531. Listing 1.04 reads as follows:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

The ALJ undertook a thorough analysis of this Listing and found there was no evidence to support that Ms. Gonzales suffered from any of the conditions set forth in A, B or C as required **in conjunction with** facet arthropathy or degenerative disc in order to satisfy every criterion of Listing 1.04. Ms. Gonzales does not point to any such supporting evidence, and the Court, in its limited review, finds none. Ms. Gonzales bore the burden of proof to establish to the ALJ that she met all of the criteria of the Listing. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). She did not meet this burden before the ALJ and does not now offer evidence or argument to suggest otherwise. Therefore, the ALJ did not commit error, because he had no evidence before him to establish that Ms. Gonzales's impairments met or equaled Listing 1.04. *Lusk v. Comm'r*,

106 F. App'x 405, 411 (6th Cir. 2004).

### 3. The ALJ's RFC Determination

Ms. Gonzales next argues that the ALJ erred in determining her RFC, because he failed to consider the reports of Dr. Campbell and Dr. Marin. This argument requires a bit of unpacking. Under separate cover from her briefing, Ms. Gonzales submitted the reports of Dr. Campbell, Dr. Marin, and Dr. J.R. Carale, all of which she contends are not part of the record and support her claim that she is disabled.

Contrary to Ms. Gonzales's assertions, Dr. Campbell's and Dr. Marin's reports are in the record. (Dkt. #18 at 153-54, 286-88.) The ALJ specifically referred to and discussed both doctors' opinions in his decision.[6] (Dkt. #18 at 242-43, 245-46.) In fact, the ALJ noted that his RFC determination was "consistent with the opinions of Dr. Campbell, an examining physician" and discussed Dr. Campbell's findings at length in his decision. Accordingly, the Court finds that the ALJ's RFC determination was supported by substantial evidence – the same evidence that Ms. Gonzales now brings to the attention of the Court.

Turning back to Ms. Gonzales's additional submission, only Dr. Carale's report does not appear in the record or in the ALJ's decision. Although Ms. Gonzales contends that she submitted Dr. Carale's report several times, it is unclear when and to whom she made the submissions. Logically, the Court cannot find error in the failure to consider evidence that was

---

[6]The Court is aware that Dr. Marin generated two reports, only one of which is contained in full in the record. However, the absent second report was referenced, accurately summarized, and refuted in Dr. Richman's report. (Dkt. #18 at 150.) In his decision, the ALJ discussed Dr. Marin's opinion set forth in the second report and Dr. Richman's disagreement therewith. Accordingly, the Court cannot find that the ALJ erroneously failed to consider Dr. Marin's second report.

-12-

not made available for consideration. The Court therefore assumes for the purposes of this Order that Ms. Gonzales submitted the report to the ALJ and to the Appeals Council.

Dr. Carale's report reflects his diagnosis that Ms. Gonzales suffers from stomach ulcers. However, Ms. Gonzales claimed in her application for benefits only that arm pain prevents her from being able to work. Because she made no allegations concerning ulcers, stomach pain, or other stomach-related troubles as a cause of her disability, the report is irrelevant to her claims. Therefore, assuming that the ALJ was in possession of the report, any failure to discuss the report would constitute harmless error. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991). Similarly, because the Appeals Council only must consider evidence that is material to a case, any failure to discuss the report would not be error. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). In sum, the Court finds no prejudicial error with regard to any of the medical reports Ms. Gonzales has submitted with her briefing.

### 4.     The ALJ's Consideration of the VE's RFC Testimony

Finally, Ms. Gonzales argues that the ALJ erred at step four in finding that she was able to perform her past prior work, because he failed to consider the VE's testimony that a hypothetical individual with Ms. Gonzales's RFC, who also required one-hour naps or rest at will and could only walk up to 20 minutes at a time would not be able to perform any work. It is well settled in the law that ALJs are not required to consider or accept answers to hypothetical questions that include limitations proposed by a plaintiff, but not accepted as part of the RFC. *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995). Here, the ALJ's RFC assessment only imposed a general restriction to light activities and limited the use of the hands and arms, including lifting, carrying, and reaching. The additional limitations in the hypothetical Ms.

Gonzales references concerning walking and napping are not part of the ALJ's RFC or any doctor's opinions, but are rather a direct reflection of Ms. Gonzales's hearing testimony. Accordingly, the ALJ did not err by not accepting the VE's answer to the enhanced hypothetical question.

**IV.   Conclusion**

For the foregoing reasons, it is **ORDERED** that the Commissioner's decision is **AFFIRMED**.  Costs are awarded to the Commissioner.  Any application shall be submitted within 10 days.

Dated this 22nd day of May, 2009

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge